IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| COUNTRY PREFERRED INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>JUSTIN WERNER and LAWRENCE LUCKY,<br><br>    Defendants. | Case No. 4:25-cv-00578-FJG |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Country Preferred Insurance Company ("CPIC"), by and through Adam P. Joffe of Traub, Lieberman, Straus & Shrewsberry LLP and Scott D. Hofer and Kevin D. Brooks of Baker Sterchi Cowden & Rice LLC, and for its First Amended Complaint for Declaratory Judgment against Defendants, Justin Werner ("Werner") and Lawrence Lucky ("Lucky"), it states as follows:

### THE PARTIES

1. CPIC is, and at all relevant times has been, a corporation organized under the laws of Illinois and with its principal place of business in Bloomington, Illinois. At all relevant times, CPIC was an insurance company whose policies may be sold throughout the country, including in Missouri.

2. Werner is, and at all relevant times has been, a citizen of the state of Missouri.

3. Lucky is, and at all relevant times has been, a citizen of the state of Missouri.

### JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of

**EXHIBIT 1**

$75,000, exclusive of interest and costs. Specifically, this matter relates to an insurance policy providing in excess of $75,000.00 in coverage and an underlying lawsuit seeking damages in excess of $75,000.00.

## VENUE

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (2) because at least one defendant resides in this judicial district and all defendants are residents of Missouri. Moreover, a substantial part of the events giving rise to this litigation occurred in this judicial district. Specifically, the alleged incident giving rise to the underlying lawsuit occurred in Jackson County, Missouri, and this lawsuit relates to the interpretation of an insurance policy issued to Werner in Jackson County, Missouri.

## THE UNDERLYING LAWSUIT

6. On or about February 5, 2025, Lucky filed a Petition for Defamation against the Kansas City Star Company ("Kansas City Star"); Judy Thomas ("Thomas"); and Werner in the Circuit Court of Jackson County, Missouri, under case number 2516-CV03684.

7. On or about August 27, 2025, Lucky filed an Amended Petition for Defamation against the Kansas City Star, Thomas, and Werner ("*Lucky* Lawsuit"). (A true and correct copy of the *Lucky* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

8. The *Lucky* Lawsuit arises out of allegations that Werner and others defamed Lucky by making unfounded and false allegations that Lucky had engaged in criminal sexual conduct with Werner while Werner was sixteen years old. (Ex. A.)

9. The *Lucky* Lawsuit alleges that, in 2008, Werner met Lucky through the International House of Prayer, Kansas City ("IHOPKC"). (Ex. A, ¶ 8.)

10. The *Lucky* Lawsuit alleges that, from 2008 to 2010, Lucky held a paid staff position with IHOPKC, relating to IT and music. (Ex. A, ¶ 9.)

11. The *Lucky* Lawsuit further alleges that Lucky also volunteered with youth ministries from about 2008 through 2010. (Ex. A, ¶ 9.)

12. The *Lucky* Lawsuit alleges that during this time, Lucky and Werner met in group settings but not in one-on-one settings. (Ex. A, ¶¶ 9-10.)

13. The *Lucky* Lawsuit further alleges that in February 2010, Lucky accepted a new job as a recording engineer and production manager for a record label, at which time he allegedly left his job with IHOPKC. (Ex. A, ¶¶ 11-12.)

14. The *Lucky* Lawsuit further alleges that in 2011, Werner was allegedly hired to do IT and website design for the same record label at which Lucky had been previously hired. (Ex. A, ¶ 14.)

15. The *Lucky* Lawsuit alleges that in 2011, after Werner was eighteen years old, Werner asked Lucky if they could begin meeting privately outside of work. (Ex. A, ¶ 16.)

16. The *Lucky* Lawsuit alleges that between August 19, 2011 and November 22, 2011, Werner and Lucky met approximately eight to ten times. (Ex. A, ¶ 19.)

17. The *Lucky* Lawsuit further alleges that these personal meetings ultimately led to consensual sexual acts between Werner and Lucky. (Ex. A, ¶ 23.)

18. The *Lucky* Lawsuit alleges that this relationship ended in November 2011 when Werner and Lucky agreed that the private meetings should cease. (Ex. A, ¶ 25.)

19. The *Lucky* Lawsuit alleges that in July 2022, Werner filed a false police incident report with the Kansas City Policy Department, claiming that Lucky committed statutory rape by having sex with Werner in 2010, when he was 16 years old and that the sexual contact occurred during "counseling" sessions at IHOPKC. (Ex. A, ¶¶ 37-38.)

20. The *Lucky* Lawsuit alleges that, after investigating these claims for roughly a year, the police found no evidence to support Werner's claims, and the case was allegedly closed on August 9, 2023. (Ex. A, ¶¶ 44-45.)

21. The *Lucky* Lawsuit further alleges that Werner then "decided to recycle his defamatory lies to Judy Thomas, reporter for the Kansas City Star, in the summer of 2024." (Ex. A, ¶ 47.)

22. Thomas had allegedly published a series of articles about clergy sexual abuse at IHOPKC, and the *Lucky* Lawsuit alleges that Werner "framed his defamatory allegations to Thomas as another example of sexual abuse sanctioned by IHOPKC." (Ex. A, ¶ 48.)

23. The *Lucky* Lawsuit alleges that Werner's allegations were investigated again in 2024, with no probable cause found to pursue charges against Lucky. (Ex. A, ¶¶ 53-54.)

24. The *Lucky* Lawsuit further alleges that, even so, Thomas proceeded to publish inflammatory and untrue stories regarding Werner's interactions with Lucky. (Ex. A, ¶¶ 55-58.)

25. The *Lucky* Lawsuit alleges that these articles were allegedly published on August 9, 2024; August 20, 2024; August 21, 2024; September 11, 2024; and October 17, 2024. (Ex. A, ¶¶ 59-68.)

26. The *Lucky* Lawsuit alleges that each of these articles allegedly made false and defamatory claims about Lucky. (Ex. A, ¶¶ 59-68.)

27. The *Lucky* Lawsuit alleges that "the damage to Lucky's family, his reputation, his business, and his health from these lies has been catastrophic." (Ex. A, ¶ 73.)

28. The *Lucky* Lawsuit further alleges that Lucky has become a pariah in his community, that he and his wife have been shunned and threatened, and that Lucky is no longer permitted to play music in local churches. (Ex. A, ¶ 74.)

29. The *Lucky* Lawsuit alleges that Lucky's musical projects are not being released for fear of backlash, and his business ventures have all allegedly suffered significantly. (Ex. A, ¶¶ 74-76.)

30. The *Lucky* Lawsuit alleges that Lucky and his wife have been singled out for derision and lost friends and standing in the community as a result of the defamatory allegations. (Ex. A, ¶ 77.)

31. The *Lucky* Lawsuit alleges that Lucky and his wife are both in therapy to try to deal with the aftermath, and Lucky is allegedly being treated for depression and PTSD. (Ex. A, ¶ 78.)

32. The *Lucky* Lawsuit alleges that "[i]n short, Werner and Thomas's defamatory claims, made with knowledge they are false and maliciously to destroy Lucky and his family, have had their desired effect." (Ex. A, ¶ 79.)

33. Count I of the *Lucky* Lawsuit asserts a claim for libel/defamation against the Thomas and the Kansas City Star. (Ex. A, ¶¶ 80-88.)

34. Count II of the *Lucky* Lawsuit asserts a claim for libel/defamation against Werner. (Ex. A, ¶¶ 89-96.)

35. Count III of the *Lucky* Lawsuit asserts a claim for injurious falsehood against Thomas and the Kansas City Star. (Ex. A, ¶¶ 97-102.)

36. Count IV of the *Lucky* Lawsuit asserts a claim for injurious falsehood against Werner. (Ex. A, ¶¶ 103-108.)

37. Count V of the *Lucky* Lawsuit asserts a claim for intentional infliction of emotional distress against Thomas and the Kansas City Star. (Ex. A, ¶¶ 109-114.)

38. Count VI of the *Lucky* Lawsuit asserts a claim for negligent infliction of emotional distress against Werner. (Ex. A, ¶¶ 115-123.)

39. Notwithstanding the fact that Count VI is titled "negligent infliction of emotion distress," Count VI alleges that: (1) Werner's conduct was extreme and outrageous; and (2) Werner's acts were outrageous because of evil motive or reckless indifference. (Ex. A, ¶¶ 115-123.)

40. Count VII of the *Lucky* Lawsuit asserts a claim for "negligence" against Werner. (Ex. A, ¶¶ 124-132.)

41. Notwithstanding the fact that Count VII is titled "negligence," Count VII alleges that: (1) Werner knowingly made or recklessly disregarded the truth when making false statements about Lucky; (2) initiating or encouraging baseless inquiries by third parties; and (3) engaging in a course of conduct intended to damage Lucky. (Ex. A, ¶¶ 124-132.)

## THE CPIC POLICY

42. CPIC issued a multi-peril homeowners insurance policy to Werner under policy number P010677770 for the policy period of June 10, 2024 to June 10, 2025 ("CPIC Policy"). (A true and correct copy of the CPIC Policy is attached hereto as **Exhibit B.)**

43. The CPIC Policy provides, among other things, personal and premises liability coverage subject to a $300,000 limit of liability. (Ex. B.)

# COUNT I

## THE CPIC POLICY IS NOT TRIGGERED BY THE CLAIMS ASSERTED IN THE *LUCKY* LAWSUIT

44. CPIC adopts and realleges the allegations in paragraphs 1 through 43 of its Complaint for Declaratory Judgment as paragraph 44 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

45. The CPIC Policy provides, in pertinent part, the following with respect to the liability coverage afforded therein:

**Liability Coverage – Personal & Premises**
\* \* \*

**What is covered (includes limitations)**

1. If *you* have purchased **Liability Coverage – Personal & Premises** and a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, *we* will:

    a. Pay up to *our* Limit of Liability as stated on *your* Declarations page for the damages for which an *insured* is legally liable; and

    b. Provide a defense at *our* expense by counsel of *our* choice, even if the suit is groundless, false, or fraudulent. *We* may investigate and/or settle any claim or suit that *we* decide is appropriate. *Our* duty to settle and/or defend ends when *our* Limit of Liability for this *occurrence* has been exhausted by payment of judgments of settlements.

    (Ex. B.)

46. The CPIC Policy defines the terms "bodily injury" and "property damage" as follows:

    3. *Bodily injury* means physical injury to a person. Sickness, disease, or emotional distress that is not caused by physical injury is not *bodily injury*.
    \* \* \*

    13. *Property damage* means physical injury to or destruction of tangible property, including the resulting loss of use of this property.

(Ex. B.)

47. The CPIC Policy (specifically, the "Liability Coverage – Personal & Premises" coverage part) defines the term "occurrence" as follows:

> 1. *Occurrence* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the *policy* period, in:
>
>    a. *Bodily injury;* or
>
>    b. *Property damage.*
>
>    \* \* \*

(Ex. B.)

48. The *Lucky* Lawsuit alleges that Werner's defamation of Lucky has resulted in catastrophic damage to Lucky's personal and professional reputation, his mental and physical health, and his business ventures. (Ex. A, ¶¶ 73-79.)

49. The claims asserted in the *Lucky* Lawsuit do not allege "bodily injury" and/or "property damage" as those terms are defined by the CPIC Policy.

50. Even if, for the sake of discussion, the *Lucky* Lawsuit *did* allege "bodily injury" and/or "property damage" – which it does not – such "bodily injury" and/or "property damage" would need to be caused by an "occurrence" to trigger coverage under the terms of the CPIC Policy. (Ex. B.)

51. The CPIC Policy defines the term "occurrence" to mean an accident.

52. Here, the *Lucky* Lawsuit alleges *intentional* conduct by Werner. (Ex. A.)

53. Accordingly, the claims asserted in the *Lucky* Lawsuit do not constitute "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the CPIC Policy.

54. Therefore, the CPIC Policy is not triggered by the claims asserted in the *Lucky* Lawsuit.

55. CPIC has and had no duty under the CPIC Policy to defend Werner against the *Lucky* Lawsuit, or to indemnify Werner for any judgment or settlement entered in the *Lucky* Lawsuit.

56. An actual controversy exists between CPIC, Werner, and Lucky, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, CPIC, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CPIC Policy;

    b. Find and declare that the CPIC Policy is not triggered by the claims asserted in the *Lucky* Lawsuit;

    c. Find and declare that CPIC has and had no duty under the CPIC Policy to defend Werner against the *Lucky* Lawsuit, or to indemnify Werner for any judgment or settlement entered in the *Lucky* Lawsuit; and

    d. Grant CPIC such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

### THE CPIC POLICY'S EXPECTED OR INTENDED INJURY EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *LUCKY* LAWSUIT

57. CPIC adopts and realleges the allegations in paragraphs 1 through 56 of its Complaint for Declaratory Judgment as paragraph 57 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

58. The CPIC Policy also incorporates the following exclusion relating to injuries that are expected or intended based on Werner's actions:

> F. **Liability Coverage – Personal & Premises, Liability Coverage – Premises Only,** and **Medical Payments Coverage** do not apply to the following:
>
> 1. **Expected or Intended Injury**
>
>    *Bodily injury* or *property damage* that may reasonably be expected or intended to result from the intentional acts of an *insured* even if the resulting *bodily injury* or *property damage:*
>
>    a. Is of a different kind, quality, or degree than initially expected or intended; or
>
>    b. Is sustained by a different person, entity, real property, or personal property than initially expected or intended.
>
>    This exclusion, F.1., applies regardless or whether any *insured* subjectively intended the *bodily injury* or *property* damage for which a claim is made.
>
>    * * *

(Ex. B.)

59. Here, the *Lucky* Lawsuit expressly alleges, among other things, that "[i]n short, Werner and Thomas's defamatory claims, made with knowledge they are false and maliciously to destroy Lucky and his family, have had their desired effect." (Ex. A, ¶ 79.)

60. Indeed, notwithstanding the fact that Count VI of the *Lucky* Lawsuit purports to assert a claim for "negligent" infliction of emotional distress and Count VII of the *Lucky* Lawsuit purports to asserts a claim for "negligence," the actual factual allegations asserted go directly to claims of intentional conduct on the part of Werner.

61. Accordingly, the CPIC Policy's Expected or Intended Injury Exclusion bars coverage for the claims asserted in the *Lucky* Lawsuit.

62. CPIC has and had no duty under the CPIC Policy to defend Werner against the *Lucky* Lawsuit, or to indemnify Werner for any judgment or settlement entered in the *Lucky* Lawsuit.

63. An actual controversy exists between CPIC, Werner, and Lucky, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, CPIC, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CPIC Policy;

    b. Find and declare that the CPIC Policy's Expected or Intended Injury Exclusion bars coverage for the claims asserted in the *Lucky* Lawsuit;

    c. Find and declare that CPIC has and had no duty under the CPIC Policy to defend Werner against the *Lucky* Lawsuit, or to indemnify Werner for any judgment or settlement entered in the *Lucky* Lawsuit; and

    d. Grant CPIC such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## NO COVERAGE FOR PUNITIVE OR EXEMPLARY DAMAGES

64. CPIC adopts and realleges the allegations in paragraphs 1 through 63 of its Complaint for Declaratory Judgment as paragraph 64 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

65. The CPIC Policy also incorporates the following exclusion relating to punitive or exemplary damages:

    G. **Liability Coverage – Personal & Premises** and **Liability Coverage – Premises Only** do not apply to the following:

                              \* \* \*

8. Punitive or exemplary damages. These include damages that may be imposed to punish a wrongdoer or deter others from similar conduct. If a suit is brought against an *insured* seeking covered compensatory damages and punitive or exemplary damages, *we* will afford a defense to such action but will not pay such punitive or exemplary damages.

(Ex. B.)

66. Here, the *Lucky* Lawsuit expressly seeks punitive damages. (Ex. A.)

67. In the event that the *Lucky* Lawsuit results in an award of punitive or exemplary damages, Exclusion G.8. would expressly bar coverage for any such award.

68. An actual controversy exists between CPIC, Werner, and Lucky, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, CPIC, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CPIC Policy;

b. Find and declare that the CPIC Policy's Exclusion G.8 would bar coverage for any award of punitive or exemplary damages in the *Lucky* Lawsuit; and

c. Grant CPIC such other and further relief that the Court deems proper under the facts and circumstances.

RESPECTFULLY SUBMITTED,

**BAKER STERCHI COWDEN & RICE LLC**

*/s/ Scott D. Hofer*
Scott D. Hofer, #44587
Kevin D. Brooks, #57627
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
Phone (816) 471-2121
shofer@bakersterchi.com
kbrooks@bakersterchi.com

Adam Joffe (*Pro Hac Vice forthcoming*)
Traub Lieberman Straus & Shrewsberry LLP
71 S. Wacker, Suite 2110
Chicago, IL 60606
(312) 332-3900 – Telephone
ajoffe@tlsslaw.com

**ATTORNEYS FOR PLAINTIFF**